**A. TENENBAUM & COMPANY, INC., Plaintiff–Appellee,**

v.

**Joseph F. COLANTUNO and John P. Dikeou, Defendants–Appellants.**

No. 98CA0214.

Colorado Court of Appeals, Div. V.

Aug. 5, 1999.

As Modified on Denial of Rehearing Dec. 23, 1999.

Certiorari Granted June 26, 2000.

Aronowitz & Ford, LLP, Timothy C. Ford, Denver, Colorado, for Plaintiff–Appellee.

Joseph F. Colantuno, Pro Se.

Lance P. Vanzant, Denver, Colorado, for Defendant–Appellant John P. Dikeou.

Opinion by Judge TAUBMAN.

Defendants, Joseph F. Colantuno and John P. Dikeou, appeal the judgment entered by the trial court awarding attorney fees to plaintiff, A. Tenenbaum & Co. (Tenenbaum), incurred in the pursuit of collection of a judgment debt on a promissory note. We affirm in part, reverse in part, and remand for further findings and entry of judgment in accordance with this opinion.

The judgment at issue here arose out of a complex and protracted banking and partnership dispute that resulted in judgment for Tenenbaum and against the defendants and another former partner, Robert W. Isham (now Estate of Isham), for liability on a promissory note executed by defendants' former partnership, E & A Associates (E & A). The facts of this underlying dispute are set forth in *Silverberg v. Colantuno,* 991 P.2d 280 (Colo.App.1998).

The trial court entered judgment against defendants and Isham on the promissory note on January 17, 1996, and determined that the note entitled Tenenbaum to recover for attorney fees incurred in pursuit of collection on the debt arising from the promissory note. On May 7, 1996, the trial court entered an order awarding attorney fees to Tenenbaum, and against defendants and Isham jointly and severally, for legal services rendered from February 1993 through December 1995. The court also found that, although Robert Silverberg, former managing partner of E & A, was not a defendant in the underlying lawsuit, he had satisfied his pro rata share of the note debt by making a payment to Tenenbaum. Nevertheless, he remained jointly and severally liable for the deficiency until the entire debt was paid. This finding was upheld in *Silverberg v. Colantuno, supra.*

In August 1996, Tenenbaum released Isham from liability on the note debt and attorney fee award in consideration for payment of $450,000. On February 21, 1997, Tenenbaum and defendants stipulated to the remaining amount due on the promissory note judgment after deducting the amounts paid by Isham and Silverberg and other minor credits.

On June 11, 1997, Tenenbaum filed a motion against defendants for supplemental attorney fees incurred from January 1, 1996, to March 31, 1997. In November 1997, after a hearing to determine the reasonableness of the amount sought, the trial court entered judgment in favor of Tenenbaum for attorney fees of $95,146.50 against defendants. The judgment did not apportion the fee award

between Colantuno and Dikeou, nor did it consider the effect of the release of Isham.

## I. Jurisdiction of Trial Court

Defendants first assert that the trial court lacked jurisdiction to enter the supplemental judgment for attorney fees because it was entered after the defendants had filed a notice of appeal in the underlying case. We disagree.

▮ A trial court has continuing jurisdiction to determine attorney fee issues after a notice of appeal is filed to review the merits judgment. *Koontz v. Rosener,* 787 P.2d 192 (Colo.App.1989); *see Baldwin v. Bright Mortgage Co.,* 757 P.2d 1072 (Colo.1988) (decision on the merits is a final judgment for appeal purposes despite any outstanding issue of attorney fees).

Here, the attorney fees were generated after the original judgment on the note was entered. Defendants do not dispute that the supplemental attorney fee award compensated Tenenbaum for fees incurred in collection on the note pursuant to its terms. Thus, the trial court retained jurisdiction to decide this issue after defendants had filed their notice of appeal on the underlying judgment of liability on the note.

## II. Apportionment of Attorney Fees

Defendants contend that the trial court erred by failing to apportion the attorney fee award, in contravention of statutes requiring such apportionment after a release of liability of one or more joint debtors.

### A.

As a threshold matter, we address and reject Tenenbaum's argument that defendants failed to raise this issue before the trial court and, thus, they are now precluded from doing so on appeal. Our review of the record leads us to conclude that defendants adequately raised the issue before the trial court.

### B.

Defendants assert that the trial court erred by not considering the effect on the attorney fee judgment of Isham's release from liability and Silverberg's partial payment of the note debt. Defendants assert in part that, as a result of Isham's release, the trial court should have apportioned its fee award among the remaining debtors so that each debtor is liable only for his proportionate share of attorney fees. We agree that there should have been apportionment but disagree with defendants that Silverberg should have been included therein.

▮ Our review of the court's award of attorney fees is for an abuse of discretion. However, we may review *de novo* elements of the court's legal analysis in reaching its decision. *Fail v. Community Hospital,* 946 P.2d 573 (Colo.App.1997).

▮ A creditor of joint debtors may release one or more of such debtors without affecting the liability of the remaining debtors. Such releases are considered to be payment of the full "proportionate share" of the released debtors. *See* § 13–50–102, C.R.S. 1998.

If one or more joint debtors are released, each remaining debtor shall be liable for no more than his or her proportionate share of the indebtedness, unless the remaining debtors are principal and surety. *See* § 13–50–103, C.R.S.1998.

### 1.

▮ Here, the promissory note imposed joint and several liability on the defendants for attorney fees and costs generated in pursuit of collection of the debt on the promissory note. The attorney fee award was thus a consequence of default on the note, and became part of the total promissory note debt. Because the entitlement to fees was encompassed within the note's provisions, joint and several liability attached to the debt for attorney fees and costs, as part of the total note debt, thus triggering the potential applicability of § 13–50–102 and § 13–50–103.

Tenenbaum argues that § 13–50–102 and § 13–50–103 should not apply to the attorney fee award to destroy joint and several liability because the award represents costs, as opposed to joint indebtedness that is subject

to the statutory provisions. Tenenbaum cites *Smith v. Weindrop*, 833 P.2d 856 (Colo. App.1992), for the proposition that only deficiency judgments are reduced proportionately after a release, and not associated attorney fees. We are not persuaded.

First, it is not clear from the court's discussion of attorney fees in *Smith v. Weindrop, supra*, whether the court apportioned those fees or not. Second, the fees here are contractual and represent a portion of the overall indebtedness. There is no indication in *Smith* that attorney fees there were governed by contract, and as such were part of the overall promissory note debt. Thus, even if we assume that one could properly infer from the discussion in *Smith* that the attorney fees were not subject to apportionment, the circumstances here are distinguishable.

2.

Tenenbaum released the Estate of Isham from liability, including liability for attorney fees, in consideration of partial payment of the overall debt, prior to the supplemental judgment for attorney fees. This release made applicable § 13–50–102 and § 13–50–103 with respect to attorney fees as part of the overall joint debt. Because the release included attorney fees, the Estate of Isham must be deemed to have satisfied its proportionate share of any liability for fees.

Colantuno and Dikeou are thus each liable for their proportionate share of the attorney fee judgment, and are no longer jointly liable for the entire deficiency. *See Smith v. Weindrop, supra* (release does not affect the liability of remaining joint debtors, except as to the balance of the obligation); *Collection Agency, Inc. v. Golding*, 44 Colo.App. 421, 616 P.2d 988 (1980) (release of some joint debtors left remaining debtors liable for only their proportionate shares).

3.

■ The question remains, however, regarding how to determine the defendants' "proportionate shares" of the fee deficiency pursuant to §§ 13–50–102 and 13–50–103. These statutes do not define the phrase. Defendants assert that their percentages of partnership share interest should govern

their proportionate shares of liability for attorney fees. Tenenbaum, in contrast, asserts that the proportionate shares should be determined by dividing the supplemental award by the number of judgment debtors who were formerly jointly and severally liable. We agree with Tenenbaum.

As noted, §§ 13–50–102 and 13–50–103 apply to the attorney fee award because the entitlement to fees is encompassed within the promissory note, and thus constitutes a portion of the overall joint obligation owed to Tenenbaum. Although we find little guidance in Colorado statutes and appellate decisions regarding what constitutes a joint debtor's "proportionate share" of indebtedness, we are persuaded that the attorney fee debt should be divided equally, *per capita*, among the promissory note judgment debtors who were jointly liable for attorney fees prior to the release of Isham.

We adopt this approach because it appears consistent with our statutes and prior cases. Colorado cases have alluded to the appropriateness of such a division under similar circumstances involving co-obligors. The supreme court has relied on a California case that described a co-surety's proportionate share of liability as "an *aliquot* part of the debt, based on the whole number of co-sureties." *Simpson v. Morgan*, 124 Colo. 441, 444, 238 P.2d 200, 202 (1951).

Other jurisdictions have determined that the "proportionate share" of liability among joint debtors is determined by dividing the total liability by the number of joint debtors. *See Walsh v. Miller*, 51 Ohio St. 462, 38 N.E. 381 (1894) (where one of four co-sureties was released by creditor, remaining co-sureties each owed one fourth of the original debt).

Here, attorney fees were generated in pursuit of collection on the promissory note debt, a contract debt for which each partner had assumed joint and several liability, and thus each was equally liable on the note. *See Silverberg v. Colantuno, supra*. This situation is analogous to the situations discussed above involving joint debtors on a contract who were equally liable for a debt, and whose "proportionate shares" thus constituted equal divisions of such debt.

We acknowledge that, under either Tenenbaum's view or defendants' approach, it is

possible to envision apparently unfair circumstances in which one judgment debtor would be required to pay a disproportionate amount of indebtedness. Nevertheless, any apparent inequity is ameliorated by the approach we adopt, which permits debtors to sue one another for contribution. *See Humphrey v. O'Connor*, 940 P.2d 1015 (Colo.App.1996) (for purposes of determining rights to contribution among joint venturers, proportionate share determined by percentage of share interest in joint venture where joint venture agreement provided for distribution of losses in same proportion as ownership percentages).

Thus, if either defendant pays more than his percentage share in the partnership to satisfy the attorney fee indebtedness, he may file an action for contribution against the other defendant, the Estate of Isham, and Silverberg.

Nevertheless, we conclude that defendants' proportionate share of indebtedness should be determined without considering Silverberg. In *Silverberg v. Colantuno, supra*, a division of this court upheld trial court findings that Silverberg had paid his full pro rata share of the Tenenbaum debt, but remained jointly and severally liable for the deficiency until it was satisfied. We do not include Silverberg in our apportionment scheme, however, because he was never a judgment debtor to Tenenbaum. This determination does not preclude an action by defendants against Silverberg for contribution.

The fees at issue here were generated in pursuit of collection against Isham, Colantuno, and Dikeou. Thus, each "proportionate share" will equal the amount of the supplemental judgment divided by the number of several promissory note judgment debtors, namely Isham, Colantuno, and Dikeou. The Estate of Isham is already deemed to have paid its proportionate share. *See* § 13–50–102. Thus, Tenenbaum is entitled to collect one third of the total supplemental fee judgment from Colantuno, and one third from Dikeou.

### C.

To the extent that defendants rely on *Newport Pacific Capital Co. v. Waste*, 878 P.2d 136 (Colo.App.1994), to argue that the trial court should have apportioned attorney fees according to which party generated what percentage of fees, their reliance is misplaced. *Newport* addressed the apportionment of attorney fees between two lawsuits where no joint and several liability ever existed between parties. That case did not involve a release of liability or any consideration of § 13–50–102 and § 13–50–103.

Here, the underlying actions were consolidated and the debtors were originally jointly and severally liable. Thus, the circumstances here are factually distinguishable and *Newport* is inapposite.

### III.  Omission of Silverberg

Finally, defendants argue that because Tenenbaum failed to name Silverberg separately in the action to recover on the note, it thus discharged the note debt, and, therefore, the trial court erred in awarding attorney fees at all.

The primary issue before us in this appeal is the validity of the attorney fee award. Defendants' argument is in essence a collateral attack on the underlying judgment on the promissory note, which has already been upheld on appeal, and is not the subject of this appeal. We therefore decline to entertain this argument. *See Wilson v. Board of County Commissioners*, 703 P.2d 1257 (Colo. 1985) (appellate courts address only those issues properly raised before the trial court); *see also Smeal v. Oldenettel*, 814 P.2d 904 (Colo.1991) (doctrine of collateral estoppel, or issue preclusion, prohibits relitigation of a legal issue previously determined).

Insofar as the judgment awarded attorney fees to Tenenbaum, it is affirmed. Insofar as the judgment did not apportion those fees, it is reversed, and the cause is remanded for entry of judgment in accordance with this opinion.

On remand, the trial court shall determine the appropriate rate of interest to be paid on the supplemental attorney fee judgment.

Judge ROTHENBERG and Judge ROY concur.